IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0821

_____

**FILED**

**June 5, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STEVEN O. DALE, Acting Commissioner of the
West Virginia Division of Motor Vehicles, Petitioner

v.

ANTHONY CICCONE, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom, Judge
Civil Action No. 12-AA-138

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: May 7, 2014
Filed: June 5, 2014

Patrick Morrisey, Esq.                           Anthony Ciccone, *Pro Se*
Attorney General                                 Respondent
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Petitioner

The Opinion of the Court was delivered PER CURIAM.
JUSTICE BENJAMIN concurs in part, dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2. "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

3. "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]" Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

4. "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

5. "A police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard." Syl. Pt. 4, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

6. "For a police officer to make an investigatory stop of a vehicle the officer must have an articulable reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. In making such an evaluation, a police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability, and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard." Syl. Pt. 5, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d

518 (1996).

7. "W.Va. Code § 17C-5A-1a (a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person." Syl. Pt. 3, *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997).

8. "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syl. Pt. 2, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984).

Per Curiam:

This is an appeal by Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV"), from an order of the Circuit Court of Kanawha County, West Virginia, reversing the administrative license revocation of Anthony Ciccone (hereinafter "the respondent"). The Office of Administrative Hearings (hereinafter "OAH") and the circuit court found that the DMV failed to prove that a lawful investigatory traffic stop was accomplished and consequently failed to prove that the respondent was lawfully arrested pursuant to West Virginia Code § 17C-5A-2(f) (2013). Upon thorough review of the statutory framework, briefs, arguments of counsel, record, and applicable precedent, this Court reverses the order of the Circuit Court of Kanawha County and remands for entry of an order reinstating the respondent's administrative license revocation.

## I. Factual and Procedural History

On November 4, 2010, the respondent was arrested in Grafton, West Virginia, for driving under the influence of alcohol (hereinafter "DUI"). At an administrative hearing held on March 24, 2011, Sergeant James Davis of the Grafton Police Department testified that he received a telephone call at the police department on the evening of November 4, 2010, from Ms. Sharon Marks. Sergeant Davis testified that Ms. Marks described a vehicle she had observed driving erratically and proceeding south on Route 119.[1] She stated that the

---

[1]Sergeant Davis testified that Ms. Marks also indicated that the vehicle was "weaving and swerving."

1

vehicle had Delaware registration, and she specifically informed Sergeant Davis that the driver might be intoxicated.

According to Sergeant Davis' testimony, he thereafter drove to the intersection of Route 119 and Route 50 and observed the described vehicle make a proper left turn from Route 50 East onto Route 119 North. Sergeant Davis did not observe any suspicious or erratic driving, but he stopped the vehicle based solely on the telephone call and information obtained from Ms. Marks. Although Sergeant Davis testified that he was not certain of the time of the stop, he estimated that it was approximately 11:33 p.m.

When Sergeant Davis stopped the vehicle, the respondent was not driving. He was seated in the passenger seat. The DUI Information Sheet indicates that by approximately 11:40 p.m., Officer T.R. Rutherford, also with the Grafton Police Department, arrived at the scene. Both officers detected an odor of alcohol on the respondent's breath. They also observed that the respondent had slurred speech and bloodshot eyes. The respondent admitted he had been driving the vehicle until he picked up his friend. The driver informed the officers that he had just recently gotten into the vehicle at the "Dairy King area on Rt. 50" and that the respondent had previously driven from Morgantown, West Virginia, to Grafton on Route 119.[2] According to Sergeant Davis' testimony, the respondent explained that he

_____

[2]Sergeant Davis testified as follows:

2

had started driving south from Morgantown at approximately 11:00 p.m. He also admitted that he had consumed four bottles of beer. Sergeant Davis further testified that the respondent admitted to driving the vehicle at the time of the complaint.[3] The respondent failed the sobriety tests and was arrested for DUI at 11:59 p.m. The respondent was determined to have a blood alcohol level of .104.[4]

The DMV issued an order administratively revoking the respondent's license on December 9, 2010. On October 25, 2012, the OAH reversed the respondent's license

---

> I spoke to this driver and explained to him what my complaint was; that the reason for the traffic stop was that I had a complaint that it was driving all over the road coming from Morgantown to Grafton. He indicated that he had just got into the vehicle from the Dairy King area on U.S. Route 50. He indicated that, so I asked who was driving the vehicle when they were coming from Morgantown. He indicated his friend, Mr. Ciccone.
>
> Mr. Ciccone then admitted to me that he was driving to come pick up the owner of the car and his friend in Grafton.

[3]Specifically, Sergeant Davis testified:

> I then directed him [Officer Rutherford] to take Mr. Ciccone - - that he admitted to driving the vehicle at the time of the complaint, admitted to me that he was driving, admitted that he had consumed some alcohol beverages, so at that point I directed him to take him out and perform a field sobriety on him.

[4]Neither the respondent nor the driver of the vehicle testified at the hearing. The informant, Ms. Marks, was apparently present at the preliminary hearing, but she did not attend the administrative hearing.

revocation, finding that the record was not sufficient to prove that the officers had an articulable reasonable suspicion to initiate the traffic stop. The hearing examiner cited *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), for the proposition that a police officer may rely on information provided by an informant if subsequent police work or other facts support the reliability of that information. The hearing examiner ultimately found no articulable reasonable suspicion to initiate a traffic stop because only the informant's information was used. No other observations of erratic driving or suspicious activity were made by the investigating officers. Thus, the hearing examiner found the initial traffic stop to be invalid and the resulting license revocation to be improper.

On April 11, 2013, the circuit court held a hearing on the DMV's appeal. By order dated July 25, 2013, the circuit court affirmed the hearing examiner's decision, finding that no valid initial stop occurred because the police officers relied exclusively upon Ms. Marks' tip with no corroborating police investigation or other facts supporting the reliability of the information provided by Ms. Marks. This appeal followed.

## II. Standard of Review

In syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), this Court explained the standard of review of a circuit court's order:

> On appeal of an administrative order from a circuit court,

4

this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

In syllabus point two of *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), this Court also stated:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Thus, although deference is given to the administrative agency's factual findings, the Court applies a *de novo* standard of review to the agency's conclusions of law.

## III. Discussion

### A. The Statutory Inclusion of Lawful Arrest Requirement

The DMV asserts that the circuit court erred in conflating a lawful stop with a lawful arrest, as the phrase "lawfully placed under arrest" is used in West Virginia Code

5

§ 17C-5A-2(f).[5]  The alterations to this statute over the prior decade have created some

degree of confusion surrounding the concept of lawful arrest.  The 2004 version included the

lawful arrest reference;  the 2008 version omitted that lawful arrest language; and the 2010

---

[5]West Virginia Code § 17C-5A-2(f) provides as follows:

> In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) *whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test:* Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five of this chapter.

W.Va. Code § 17C-5A-2(f) (emphasis added).

6

version once again included that language. Thus, the cases decided by this Court have differed based upon which version of the statute applied.

In *Clower v. West Virginia Department of Motor Vehicles*, 223 W.Va. 535, 678 S.E.2d 41 (2009), for instance, this Court's evaluation of the facts was guided by the 2004 version of the statute which included the lawful arrest language. In light of that particular statute, this Court held that because the police officer's stop of Mr. Clower's vehicle was not justified, Mr. Clower was not "lawfully placed under arrest" as required by the statute, and his license revocation was therefore improper. *Id*. at 544, 678 S.E.2d at 50. Although the *Clower* decision was based on the 2004 statute, the *Clower* Court referenced the alteration of the statute in 2008 and specified that "[o]ur decision on this issue is therefore *limited* to the application of the 2004 version" of the statute. *Id*. at 544 n.7, 678 S.E.2d at 50 n.7 (emphasis added).

In contrast to *Clower*, this Court's decisions in *Miller v. Toler*, 229 W.Va. 302, 729 S.E.2d 137 (2012), and *Miller v. Smith,* 229 W.Va. 478, 729 S.E.2d 800 (2012), were based upon the 2008 version of the statute which did *not* include the lawful arrest requirement. Because the *statutory* requirement for a lawful arrest was no longer present to essentially serve as a statutorily-created exclusionary rule for evidence obtained through a non-lawful arrest, this Court was tasked with determining whether the *judicially-created* exclusionary rule would apply to exclude such evidence in the civil license revocation

7

context.[6]  In the absence of the statutory lawful arrest requirement, this Court found that the judicially-created exclusionary rule would *not* serve as a method of excluding such evidence. Syllabus point three of *Toler* articulated that ruling by explaining that the judicially-created exclusionary rule is inapplicable in the context of an administrative driver's license revocation proceeding.  229 W.Va. at 303, 729 S.E.2d at 138.

The *Smith* and *Toler* opinions were *very clearly limited* to DUI incidents occurring under the 2008 version of the statute.  In *Smith*, this Court specifically noted that it was not expressing any opinion upon what the result *would have been* if the guiding statute had included the lawful arrest language.  *See* 229 W.Va. at 484 n.8, 729 S.E.2d at 806 n.8 ("Because this Court finds that the statute applicable to this case did not require a 'lawful arrest,' we have no occasion to elaborate upon what the lawful arrest language in the 2010

---

[6]The distinction between a judicially-created exclusionary rule and a statutorily-created one must not be overlooked.  In *Chase v. Neth*, 697 N.W.2d 675 (Neb. 2005), the Supreme Court of Nebraska dealt with such distinction, explaining that "the statutes in effect at the time of Chase's arrest do not require the State to establish the validity of the arrest, that requirement having been specifically removed from the statutes by the 2003 amendments." *Id.* at 684 (holding judicial exclusionary rule inapplicable to administrative license revocation proceedings, but acknowledging application of statutory exclusionary rules, where applicable); *see also People v. Krueger*, 567 N.E.2d 717, 722-23 (Ill. App. Ct. 1991) ("We believe the trial court erred in concluding that the legality of the defendant's arrest was not material to the suspension hearing because the exclusionary rule may not be applied to this civil proceeding.  Although we agree that this proceeding is civil rather than criminal or quasi-criminal, we reiterate that the issue here is not whether the court is to apply a judicially created rule pursuant to its inherent authority but whether the statute should be construed to condition the Secretary of State's power to suspend a driver's license on the presence of a valid arrest." (internal citations omitted)).

statute would have required under the facts of this particular case."); *see also Toler*, 229

W.Va. at 303 n.1, 729 S.E.2d at 138 n.1 ("The 2008 version of West Virginia Code § 17C-

5A-2 is applicable to the instant case."). The *Smith* Court also noted that reliance on *Clower*

was misplaced because *Clower* was based on the 2004 version of the statute which included

the lawful arrest language. *Id.* at 484, 729 S.E.2d at 806.

In the present case, this Court's evaluation is guided by the 2010 version of the

statute in which the lawful arrest language is once again included.[7] Consequently, this Court

must proceed with an evaluation similar to that in *Clower*, and the validity of the underlying

traffic stop is relevant to our determination. The issue is resolved by direct reference to the

requirements set forth in the West Virginia Code § 17C-5A-2(f), and the inquiry must

---

[7]In *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991), this Court explained:

> We have traditionally held that where a statute is amended to
> use different language, it is presumed that the legislature
> intended to change the law. We spoke to this concept in
> Syllabus Point 2 of *Butler v. Rutledge*, 174 W.Va. 752, 329
> S.E.2d 118 (1985):
>
> > "'The Legislature must be presumed to know the
> > language employed in former acts, and, if in a
> > subsequent statute on the same subject it uses
> > different language in the same connection, the
> > court must presume that a change in the law was
> > intended.' Syl. pt. 2, *Hall v. Baylous*, 109 W.Va.
> > 1, 153 S.E. 293 (1930)."

185 W.Va. at 404, 407 S.E.2d at 710.

9

therefore include "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol. . . ." W.Va. Code § 17C-5A-2(f)(2).[8]  As this Court stated in *Dale v. Odum*, 2014 WL 641990 (W.Va. Feb. 11, 2014) (memorandum decision), "absent a valid investigatory stop, a finding that the ensuing arrest was lawful cannot be made." *Id.* at *5.  This issue was also addressed in *Dale v. Arthur,* 2014 WL 1272550 (W.Va. March 28, 2014) (memorandum decision), as follows:

> Our decision in *Clower v. West Virginia Department of Motor Vehicles*, 223 W.Va. 535, 544, 678 S.E.2d 41, 50 (2009), applied the 2004 version of West Virginia Code § 17C-5A-2(e) which required a specific finding of "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . . or was lawfully taken into custody for the purpose of administering a secondary test." The 2008 version of the statute did not contain this language. *Miller v. Chenoweth*, 229 W.Va. 114, 117 n. 5, 727 S.E.2d 658, 661 n. 5 (2012).  However, the Legislature amended the statute in 2010, and restored the language requiring a finding that the person was either lawfully arrested or lawfully taken into custody. *Id.*

2014 WL 1272550 at *3 n.2.  As this Court observed in *Arthur*, "the decision to include this requirement is within the prerogative of the Legislature, and it is not to be invaded by this Court." *Id.* at *3.  Consequently, in cases in which the applicable version of West Virginia Code § 17C-5A-2 has included the requirement for a lawful arrest, as it does in the case sub

---

[8]The DMV also contends that the "lawful arrest" language is only intended to address matters involving a secondary chemical test.  As the circuit court correctly found, there is no merit to this argument, and it is contrary to the clear language of the statute.  The statute sets forth findings which must be made with regard to the lawful arrest of the individual for driving under the influence, distinct from any secondary chemical test issue.

judice and did in *Clower*, an individual cannot be considered lawfully arrested for DUI where law enforcement did not have the requisite articulable reasonable suspicion to initiate the underlying traffic stop. We consequently address the factual situation in the present case to determine whether the law enforcement officer's initial investigatory traffic stop was valid.

### B. The Lawful Stop and Lawful Arrest

The hearing examiner and circuit court relied upon this Court's reasoning in *Stuart* to conclude that information obtained from Ms. Marks was insufficient to create an articulable reasonable suspicion in the absence of corroborating police investigation or other facts supporting reliability. *See Stuart*, 192 W.Va. at 435, 452 S.E.2d at 893. In *Stuart*, this Court held that under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution, "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]" Syl. Pt. 1, in part, *Stuart*, 192 W.Va. at 429, 452 S.E.2d at 887. We also specified in syllabus point two that "[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." *Id.*

With specific regard to reliance upon an *anonymous* tip, syllabus point four of *Stuart* provides*:* "A police officer may rely upon an *anonymous* call if subsequent police

11

work or other facts support its reliability and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard." *Id*. (emphasis added); *see also* Syl. Pt. 5, *Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520 ("For a police officer to make an investigatory stop of a vehicle the officer must have an articulable reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. In making such an evaluation, a police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability, and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard.").

The specific holdings of *Stuart* and *Muscatell* provide the appropriate standard for the assessment of information supplied by an *anonymous* caller. The caller in the present case, however, was *not anonymous.* Ms. Marks provided her name to Sergeant Davis when she telephoned the police department, and she even appeared at the preliminary hearing. Thus, the standards relating to an *anonymous* caller are not controlling in this case. As this Court has recognized, "an anonymous tip requires more corroboration than the tip of an informant whose identity is known and who may or may not have a track record." *State v. Bookheimer*, 221 W.Va. 720, 729, 656 S.E.2d 471, 480 (2007).

This Court's determination in the present case must be premised upon whether the police officer had sufficient reliable information to form an articulable reasonable suspicion, based upon the totality of the circumstances, as those standards are explained in

12

syllabus points one and two of *Stuart*. 192 W.Va. at 429, 452 S.E.2d at 887. Applying those principles to the present case, this Court finds that the initial traffic stop was lawfully accomplished by Sergeant Davis. As outlined above, Sergeant Davis received a telephone call from an identified caller, Ms. Marks. She informed him that a vehicle with Delaware plates was weaving and swerving while proceeding south on Route 119. She described the vehicle, and she also informed Sergeant Davis that the driver could possibly be intoxicated. This Court finds that such information provided Sergeant Davis with sufficient indicia of reliability to warrant his articulable reasonable suspicion of unlawful activity and to justify the investigatory stop.

This Court's holding on this issue is consistent with the United States Supreme Court's recent decision in *Navarette v. California,* 134 S.Ct. 1683 (2014). In addressing the nature of evidence necessary to create an articulable reasonable suspicion, the Court held that an informant's tip,[9] even in the absence of police corroboration, may be sufficient if it is detailed enough to warrant the officer's articulable reasonable suspicion of unlawful activity. *Id*. at 1688. In explaining the rationale for that ruling, the United States Supreme Court reiterated established principles regarding investigatory stops: "The Fourth Amendment permits brief investigatory stops . . . when a law enforcement officer has 'a particularized and

---

[9]Writing for the majority, Justice Thomas noted that the motorist who provided the tip had identified herself by name, but, because neither the motorist nor the 911 operator were present at the suppression hearing, the prosecution and the lower courts treated the tip as anonymous. 134 S.Ct. at 1687 n.1.

objective basis for suspecting the particular person stopped of criminal activity.'" *Id*. at 1687 (internal citation omitted). The Court further explained: "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' The standard takes into account 'the totality of the circumstances - the whole picture.'" *Id.* (internal citations omitted).

In *Navarette*, the informant had provided a tip to a 911 emergency operator and had indicated that a truck had run her off the highway. Officers stopped that truck and discovered thirty pounds of marijuana. The United States Supreme Court ultimately found that the tip had sufficient indicia of reliability, even without additional police corroboration. *Id*. at 1688. The motorist had described the truck by model name, brand name, and license plate number, and the police had responded to the tip shortly after it was received. Further, based upon the motorist's allegations of the specific conduct of running her car off the highway, the Court reasoned that the tip created reasonable suspicion of an ongoing crime, such as drunk driving, rather than an isolated instance of reckless behavior. *Id.* at 1691. The motorist had also utilized the 911 system, thereby permitting recording of the call and subjecting the caller to potential prosecution for misuse of the emergency system. *Id*. at 1690.[10]

---

[10]As observed in *Commonwealth v. Love*, 775 N.E.2d 1264 (Mass. App. Ct. 2002):

> The rationale for according more weight to the reliability of persons who are either identified or able and not unwilling to be

14

Having determined that the initial investigatory traffic stop was proper in the present case, this Court also addresses the issue of probable cause for the respondent's arrest. Although the law enforcement officers did not observe the respondent operating the vehicle, this Court has previously held that an officer does not have to personally observe an individual operating the motor vehicle while under the influence in order to arrest that individual for DUI. In *State v. Davisson*, 209 W.Va. 303, 547 S.E.2d 241 (2001), this Court stated as follows:

> With particular reference to the offense of drunk driving, this Court acknowledged in *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997) that "'an officer having reasonable grounds to believe that a person has been driving while drunk may make a warrantless arrest for that offense even though the offense is not committed in his presence.'" *Id.* at 167, 488 S.E.2d at 442 (quoting *Bennett v. Coffman*, 178 W.Va. 500, 361 S.E.2d 465, 467 (1987)).

209 W.Va. at 308, 547 S.E.2d at 246. Further, syllabus point three of *Carte* provides:

> W.Va. Code § 17C-5A-1a (a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the

> identified is that these individuals do not "have the protection from the consequences of prevarication that anonymity would afford." Identified and readily identifiable individuals expose themselves to charges of filing false reports, and they risk reprisal from those they accuse[.]

*Id.* at 1268-69 (internal citations omitted).

15

> vehicle could not otherwise be located where it is unless it was driven there by that person.

200 W.Va. at 162, 488 S.E.2d at 437; *see also Bennett v. Coffman*, 178 W. Va. 500, 502, 361 S.E.2d 465, 467 (1987), *overruled in part on other grounds*, *State v. Chase Sec., Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992) (*Bennett* explains that "an officer having reasonable grounds to believe that a person has been driving while drunk may make a warrantless arrest for that offense even though the offense is not committed in his presence." (internal citation omitted)); *accord State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976) (finding that driving under influence does not have to be committed in presence of officer).

In *Dale v. Reynolds*, 2014 WL 1407375 (W.Va. 2014) (memorandum decision), Mr. Reynolds was found intoxicated in the driver's seat of his automobile in a Kroger parking lot. *Id.* at *1. He admitted he had been drinking and that he had previously driven from a different location to that Kroger parking lot. In assessing those circumstances, this Court explained that "[t]he uncontested facts show that Mr. Reynolds was intoxicated the night of June 29, 2010. However, the question presented for this Court's decision is whether the evidence proves that Mr. Reynolds operated a motor vehicle during his intoxication." *Id.* at *2. In addressing the issue, the *Reynolds* Court reiterated our prior holding that there is no requirement that an officer observe the person driving under the influence. *Id.* at *3. The Court concluded that the evidence demonstrated that "[i]t was reasonable to believe that the car came to be in the Kroger parking lot as a result of Mr.

16

Reynolds's actions." *Id*. at \*4; *see also State v. Hummel,* 796 N.E.2d 558, 562-63 (Ohio Ct. App. 2003) (holding that "probable cause exists when the facts and circumstances known to the police officer and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. In situations where the arresting officer has not observed the operation of the vehicle, such facts and circumstances would necessarily have to include a relationship between the time there was evidence to show the influence of intoxicants and the time of operation of the vehicle." (internal citations omitted)).[11]

In the present case, Sergeant Davis' testimony and the DUI Information Sheet

---

[11]A situation similar to the present case was encountered in the context of criminal prosecution in *State v. Sharp*, 702 P.2d 959 (Mont. 1985). In *Sharp*, the court explained that "[a] founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." *Id*. at 963 (citations omitted). The court continued:

> Here, Officer Williams . . . observed the passenger Wesley Sharp in the vehicle slouched over and apparently intoxicated. Based on that observation, Officer Williams inquired further. In response to the officer's questions, Ron Truman [the driver when the officer observed the vehicle] stated that the two had just switched places and that they did so because Sharp was "too drunk to drive." To further corroborate this, Officer Williams went back to the squad car and had the dispatcher call the First and Last Chance Saloon. The informant, then identified, stated that Wesley Sharp was driving the car when it left the saloon. At that time, Officer Williams' investigation had produced facts that ripened into the probable cause to arrest Wesley Sharp.

*Id.*

17

indicate that the respondent admitted he had consumed four beers, and he also admitted he was driving prior to the time he picked up his friend at the Dairy King on Rt. 50 in Grafton. Sergeant Davis also testified that the respondent admitted he was driving at the time the tip from Ms. Marks was provided to Sergeant Davis. The chronology of the events[12] also supports that admission. Thus, this Court finds that the respondent's admissions to police officers, as well as the timing of Ms. Marks' telephone call and the respondent's route of travel, provided the officers with sufficient probable cause to arrest the respondent for DUI.

## C. The Revocation

To warrant administrative revocation of a driver's license, the facts must establish, by a preponderance of evidence, that the person had been driving under the influence. *See Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984) ("We believe that these facts are sufficient to establish by a preponderance of the evidence that the appellant had been driving under the influence of alcohol. A preponderance of the evidence is all that is required to justify administrative revocation. *See*, W.Va. Code, 17C-5A-2(j)(4) (1981); *Jordan v. Roberts*, W.Va., 246 S.E.2d at 262, 263."). As this Court explained in syllabus point two of *Albrecht*,

---

[12]As noted above, the respondent left Morgantown at approximately 11:00 p.m. and drove south on Route 119 toward Grafton. Ms. Marks observed the vehicle while it was still on Route 119 South. To pick up his friend at the Dairy King, the respondent would have exited Route 119 onto Route 50. Sergeant Davis observed the vehicle at approximately 11:33 p.m., and Officer Rutherford arrived at the scene at 11:40 p.m.

18

> Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

173 W. Va. at 269, 314 S.E.2d at 861.

Having determined that both the initial stop and the arrest were valid, this Court finds that evidence was properly and adequately presented to prove, by a preponderance of evidence, that the respondent was driving under the influence of alcohol on the evening of November 4, 2010. The chronology of events outlined above, the respondent's admission of consuming alcoholic beverages and driving, and the respondent's blood alcohol level are sufficient proof to warrant the administrative revocation of his driver's license for driving under the influence of alcohol. The final order of the circuit court is consequently reversed, and this case is remanded to the circuit court for reinstatement of the order administratively revoking the respondent's driver's license.

Reversed and Remanded with Directions.