# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Patricia S. Reed, Commissioner,**
**West Virginia Division of Motor Vehicles**
**Petitioner Below, Petitioner**

**FILED**

**April 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0040** (Kanawha County 13-AA-82)

**David S. Littleton,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

The petitioner, Patricia S. Reed,[1] Commissioner of the West Virginia Division of Motor Vehicles, appeals the December 16, 2013, order of the Circuit Court of Kanawha County that affirmed the May 28, 2013, order of the Office of Administrative Hearings ("OAH"). The OAH's order reversed two related administrative orders issued by the Commissioner on September 16, 2010: an order revoking the respondent David S. Littleton's driver's license for ninety days, and a separate order disqualifying Mr. Littleton from operating commercial motor vehicles for one year.[2] The Commissioner's orders were based upon information provided by a West Virginia State Trooper that Mr. Littleton was driving under the influence of alcohol ("DUI") on August 6, 2010.

In this appeal, the Commissioner, by counsel Elaine L. Skorich, argues that the revocation and disqualification orders should have been upheld. Mr. Littleton, by counsel John Michael Cassell, urges this Court to affirm the circuit court's and OAH's orders. This Court has before it the parties' briefs and the appendix record, and counsel for the

---

[1]This appeal was filed by Steven O. Dale when he was the Acting Commissioner of the Division of Motor Vehicles. Pursuant to Rule 41(c) of the Rules of Appellate Procedure, the current Commissioner, Patricia S. Reed, was automatically substituted as the named petitioner.

[2]Mr. Littleton held a commercial driver's license.

1

Commissioner presented oral argument on February 10, 2015.[3]  After carefully considering the evidence, arguments, and pertinent legal authority, we conclude that it was error to reverse the Commissioner's September 16, 2010, revocation and disqualification orders. Moreover, because this case presents no new or substantial questions of law, it satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for disposition by memorandum decision.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The Commissioner's September 16, 2010, revocation order was issued pursuant to West Virginia Code § 17C-5A-1 (2008), which provides that the Commissioner shall revoke or suspend the license of a person who drives a motor vehicle while under the influence of alcohol or while having an alcohol concentration in his blood ("BAC") of .08 or more, by weight.  The companion order arising from this same DUI episode disqualified Mr. Littleton from operating commercial motor vehicles pursuant to West Virginia Code §§ 17E-1-13 (2010) and 17E-1-15 (2005).

Mr. Littleton challenged those orders before the OAH.  At the administrative hearing, State Trooper M. J. Glende testified that on the night of August 6, 2010, he was conducting a routine road patrol when he saw a car weaving in the roadway and displaying defective registration lights.  On the DUI Information Sheet, which was admitted into evidence at the hearing, the trooper recorded that the vehicle was weaving and swerving, that the tires were on the road's line marker, and that the vehicle had defective equipment.

Trooper Glende turned on his cruiser's flashing lights and stopped the car, which was being driven by Mr. Littleton and contained a passenger, Patricia Painter.[4]  The trooper smelled a strong odor of alcohol on Mr. Littleton's breath and observed that Mr. Littleton had bloodshot eyes.  Mr. Littleton admitted to the trooper that he had just left the Moose Lodge where he had consumed "a couple" of alcoholic drinks before driving.  The trooper, who is also a DUI field sobriety instructor, testified regarding his administration of three field sobriety tests:  the horizontal gaze nystagmus, the walk and turn, and the one leg stand.  As reflected in the DUI Information Sheet, the trooper testified that Mr. Littleton failed all three field tests.  Mr. Littleton also failed a preliminary breath test with a result of .102 BAC.  The trooper arrested Mr. Littleton for DUI and transported him to the police station, where he registered a BAC of .096 on the secondary chemical breath test.

---

[3]Mr. Littleton waived the opportunity to have his lawyer participate in the oral argument.

[4]Ms. Painter was the owner of the car.

2

While Mr. Littleton did not testify at the OAH hearing, he did present testimony from Ms. Painter. She asserted that on the night in question, Mr. Littleton's driving was fine, there was no weaving, and he did not appear to be drunk. Ms. Painter testified that upon hearing the trooper say that the vehicle's registration light was out, she exited the car and saw that the light was illuminated. According to Ms. Painter, she questioned the trooper about the light and he answered that the light looked dim.

In its order, the OAH completely discredited the trooper's testimony and, relying upon Ms. Painter's assurances that Mr. Littleton's driving had been fine, ruled that the trooper lacked reasonable suspicion to stop the vehicle. Because the OAH found that the stop was illegal, it disregarded all evidence obtained as a result of the stop and, consequently, overturned the administrative revocation and disqualification orders. Thereafter, the circuit court affirmed the OAH's decision.

**DISCUSSION**

The dispositive issue in this case is whether Trooper Glende was legally justified in stopping the vehicle driven by Mr. Littleton. The law is well-settled that "'[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]' Syllabus point 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994)." Syl. Pt. 3, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). When rendering a decision on a license revocation, the OAH is required to make a finding as to whether a driver was lawfully placed under arrest. W.Va. Code § 17C-5A-2(f)(2) (2010). In *Dale v. Ciccone*, 233 W.Va. 652, 760 S.E.2d 466 (2014), we restated our prior rulings that an individual cannot be considered lawfully arrested for DUI if the officer lacked reasonable suspicion to initiate the traffic stop. *Id.*, 233 W.Va. at 658-59, 760 S.E.2d at 472-73.

In the instant case, whether Trooper Glende had reasonable suspicion to initiate the traffic stop is a question of fact. We have held that "[o]n appeal of an administrative order from a circuit court . . . findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." *Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520, syl. pt. 1, in part. Furthermore, West Virginia Code § 29A-5-4(g) (1998) provides that a court "shall reverse, vacate or modify" an administrative decision that is "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record; or [is] . . . [a]rbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion[.]" Syl. Pt. 2, in part, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d

3

342 (1983).

The OAH found inconsistencies between the testimony offered by Trooper Glende and Ms. Painter. "Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court." *Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520, syl. pt. 6. The OAH rejected Trooper Glende's testimony upon finding that the trooper "could not recall with any specificity during cross-examination the circumstances or events which occurred that resulted in the traffic stop[.]" However, a review of the record demonstrates that the OAH's findings in this regard are clearly wrong.

The information that Trooper Glende could not recall with specificity concerned events just prior to when he observed the Littleton/Painter vehicle. The trooper testified that he had been patrolling, but Ms. Painter testified that the police cruiser had been stopped on a property near the Moose Lodge. The trooper testified he did not see Mr. Littleton pull out of the Moose Lodge. When asked if Mr. Littleton had pulled out in front of him, the trooper testified, "I don't believe so. I believe I looked up and saw that he had registration lights out, and he was weaving in the roadway, and so I initiated a traffic stop." When asked if he had made a "u-turn," the trooper indicated that he could not remember because he had patrolled the same road, back and forth, for six hours that night. Based on this, the OAH labeled the trooper's testimony as "inconclusive, inconsistent, rambling, and vague" and proceeded to reject the testimony in total.

The OAH's findings are simply not supported by the record. Considering that the trooper had patrolled the same road for six hours that night, it is understandable, and of no consequence, that he could not recall exactly where he was before he noticed the Littleton/Painter vehicle. Trooper Glende did recall and affirmatively testified that he "first observed [the] vehicle . . . when I was behind [it] going south on [route] 115." Ms. Painter's testimony is consistent in that she said the trooper was behind them when he initiated the traffic stop. Moreover, the trooper testified with certainty that upon observing the vehicle, he saw that Mr. Littleton was weaving and driving with his tires on the line marker, and that the vehicle had a defective registration light. The trooper was also able to recall details about the administration of the field sobriety tests. The witnessing of erratic driving, the initiation of a traffic stop, and the administration of field tests are all noteworthy events that the officer would likely remember–especially when the individual fails each of the tests. The trooper's inability to recall unremarkable and insignificant details of that night's patrol does not mean that he was lying about the basis for the traffic stop nor does it warrant a rejection of his testimony.

4

Furthermore, when choosing to believe Ms. Painter instead of the officer, the OAH arbitrarily failed to consider–or even mention–the inconsistencies in Ms. Painter's own testimony. The OAH credited Ms. Painter's assertion that Mr. Littleton did not appear to be drunk, yet her testimony varied about the amount of alcohol he consumed at the Moose Lodge. She claimed he only consumed "a drink"; that he took "like, one little drink from a beer can"; and that he had "just a couple" of drinks. She then admitted that she "wasn't really focused on him. I was on the dance floor." Furthermore, although she heard the trooper ask Mr. Littleton whether he had been drinking, she claimed she could not hear Mr. Littleton's response despite being seated next to him in the car.

Accordingly, after carefully considering the entire appendix record and applying the deferential standard of review for findings of fact, we are left with the inescapable conclusion that the OAH was clearly wrong to discount the trooper's testimony that Mr. Littleton was weaving and driving with his tires on the line marker. This type of erratic driving is sufficient to give a law enforcement officer an articulable reasonable suspicion to stop a vehicle. *E.g., Ciccone*, 233 W.Va. at 660, 760 S.E.2d at 474 (recognizing that weaving and swerving present reasonable suspicion for traffic stop).

Having concluded there was reasonable suspicion for the stop, there can be no dispute that Mr. Littleton was DUI. He smelled of alcohol, had bloodshot eyes, and admitted to the trooper that he consumed "a couple" of alcoholic drinks at the Moose Lodge before driving. Moreover, he failed three field sobriety tests, the preliminary breath test, and the secondary chemical breath test with a result of .096 BAC. Pursuant to statute, secondary chemical test evidence showing a BAC of .08 or more is *prima facie* evidence that a person is under the influence of alcohol. W.Va. Code § 17C-5-8(a)(3) (2004).[5] None of this evidence was rebutted at the administrative hearing. Under these circumstances, the Commissioner was required to revoke Mr. Littleton's driver's license. *See* W.Va. Code 17C-5A-1(c) (directing that Commissioner "shall" revoke or suspend license of person who drove with BAC of .08 or more). We find that it was error for the OAH to overturn the Commissioner's September 16, 2010 orders, and error for the circuit court to affirm the OAH.[6]

---

[5]In 2013, this statutory presumption was redesignated as West Virginia Code § 17C-5-8(b)(3).

[6]We note that the Commissioner raises two additional assignments of error in this appeal. First, the Commissioner argues that Mr. Littleton's license is also subject to revocation under a different statute, West Virginia Code § 17C-5A-1a (2010), which provides for revocation after a person is convicted of DUI. While this administrative matter was pending, Mr. Littleton pled guilty to first offense DUI in the related criminal case. However, he later withdrew that guilty plea and a judgment of guilt was never entered. The

5

For the foregoing reasons, we reverse the circuit court's December 16, 2013, order and remand this case to the circuit court for reinstatement of the Commissioner's September 16, 2010, administrative revocation and disqualification orders.[7]

Reversed and remanded with directions.

**ISSUED:** April 9, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

Commissioner argues that even though the judge presiding over the criminal case allowed the guilty plea to be withdrawn, Mr. Littleton should nonetheless be deemed convicted for purposes of license revocation. This issue was not raised before the circuit court. Because we have concluded that Mr. Littleton's license was properly revoked pursuant to West Virginia Code § 17C-5A-1 on the basis of the evidence presented at the OAH hearing, we decline to address the Commissioner's alternate theory under § 17C-5A-1a. Second, the Commissioner argues that even if Mr. Littleton's arrest was unlawful, the only remedy should have been the exclusion of the secondary chemical breath test result. We expressly rejected this same argument in *Ciccone. See* 233 W.Va. at 659 n.8, 760 S.E.2d at 473 n.8.

[7]The appendix record reflects that in addition to the September 16, 2010, orders, the Commissioner issued separate orders on December 27, 2013, revoking Mr. Littleton's driver's license and disqualifying him from operating commercial vehicles. The December 2013 orders were the result of the same DUI that occurred on August 6, 2010, but were premised on the Commissioner's alternate theory that Mr. Littleton should lose his license as a result of his withdrawn guilty plea. *See supra* note 6. On February 5, 2015, Mr. Littleton advised this Court that he has now served the periods of suspension and disqualification imposed by the December 2013 orders. Although we decline to rule on the validity of the Commissioner's alternate theory, Mr. Littleton should not be required to lose his license twice for the same incident of DUI. Accordingly, on remand, the circuit court must ascertain whether Mr. Littleton has, in fact, already served his periods of suspension and disqualification arising from his DUI on August 6, 2010. If he has, he shall not be required to serve them again.

6