**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Christopher Knotts,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0523** (Harrison County (19-P-166-1)

**Everett Frazier, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Christopher Knotts, by counsel Zachary S. Dyer, Thomas G. Dyer, and Mary Guy Dyer, appeals the Circuit Court of Harrison County's June 18, 2020, order affirming the Office of Administrative Hearings' order, which affirmed the Department of Motor Vehicle's revocation of petitioner's driver's license due to driving under the influence of alcohol and/or drugs. Respondent Everett Frazier, Commissioner, West Virginia Division of Motor Vehicles, by counsel Janet E. James, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 3, 2017, at approximately 6:24 p.m., Officer F.S. Toothman of the Bridgeport Police Department responded to the McDonald's parking lot in Bridgeport in response to a call from Kaitlin Murrell regarding a possible hit and run. Officer Toothman made contact with petitioner and Ms. Murrell and took a witness statement from Ms. Murrell. She told the officer that she was parked at a liquor store when petitioner pulled in behind her and bumped her car. When Ms. Murrell exited her vehicle to assess potential damage, petitioner told Ms. Murrell he did not know if he hit her, though she noticed that petitioner could barely stand and was slurring his words. She also stated that she smelled alcohol on petitioner's breath. Because there was no damage to Ms. Murrell's vehicle, she pulled away to get petitioner's license plate number and contact police. In addition to the plate number, Ms. Murrell provided a description of petitioner's truck and his location to police. Further, when petitioner exited the liquor store parking lot, Ms. Murrell contacted police again and followed petitioner's vehicle. She reported that petitioner's vehicle was swerving before he pulled into the McDonald's parking lot. Ms. Murrell pulled in behind him.

1

When Officer Toothman arrived, petitioner's truck was in the drive-through with the engine running. The officer observed that petitioner had slurred speech, was disoriented, and was uncoordinated. He also saw a case of beer in petitioner's car. Petitioner was unsteady and staggered while getting out of his car, while walking, and while standing. Petitioner had to hold onto his truck to walk to the back of it. Petitioner admitted to the officer that he had consumed three to four beers and several medications, including Klonopin, earlier that day. Petitioner did not exhibit any clues of impairment during the horizontal gaze nystagmus test. The walk and turn and one leg stand tests were not administered because petitioner reported that he could not perform the tests due to a medical condition. The officer did, however, administer a preliminary breath test ("PBT"), during which time he noticed an odor of alcohol on petitioner's breath. According to the circuit court, the officer did not obtain a result on the PBT due to an insufficient breath sample, as indicated by the machine. The officer believed that petitioner was trying to evade the test by putting his tongue on the tube and not blowing hard enough. Petitioner was placed under arrest for driving under the influence, and he was transported to the Bridgeport Police Department, where Officer Toothman administered a secondary chemical test of the breath. The officer observed petitioner for twenty minutes prior to administering the test to ensure that he did not ingest food, drink, or other substances. After petitioner signed the implied consent statement and performed the test, the machine showed a blood alcohol content of .156 at 7:28 p.m. In a post-arrest interview, petitioner stated that he was operating a vehicle; that he had consumed three or four beers; and that he was under the influence of "a lot of drugs," including Propanol, Gabapentin, and Klonopin. He said that he took the drugs around 6:00 p.m. on the day of his arrest.

On or about January 31, 2017, the Division of Motor Vehicles mailed a letter to petitioner notifying him that his license would be revoked effective March 7, 2017. He timely filed his written objection and hearing request. On July 12, 2017, the OAH held an administrative hearing at which petitioner appeared with counsel. During the hearing, petitioner testified that he drank two beers before going to the liquor store. The OAH entered its final order on August 19, 2019, upholding the revocation of petitioner's driver's license for DUI with a blood alcohol content of .15 or above ("aggravated DUI"). Petitioner appealed that final order to the Circuit Court of Harrison County.

In its June 18, 2020, final order, the circuit found that Officer Toothman had reasonable suspicion to stop petitioner and investigate. The circuit court quoted *Dale v. Ciccone*, 233 W. Va. 652, 659, 760 S.E.2d 466, 474 (2014), wherein this Court addressed a traffic stop initiated because a caller contacted police to report that a vehicle was weaving and swerving while proceeding south on Route 119. The caller "described the vehicle, and she also informed [the officer] that the driver could possibly be intoxicated. This Court finds that such information provided [the officer] with sufficient indicia of reliability to warrant his articulable suspicion of unlawful activity and to justify the investigatory stop." *Id.* In its final order, the circuit court found that not only was there a tip from Ms. Murrell, the officer observed petitioner. The court found that the facts in the instant case were analogous to those in *Dale v. Ciccone*, where this Court found that "the initial traffic stop was lawfully accomplished by [the officer]." The circuit court also determined that the instant case met the standard set forth in Syllabus Point 2 of *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984):

Where there is evidence reflecting that a driver was operating a motor

vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

The circuit court also found that even if the officer had not observed petitioner driving, he still had reason to make a warrantless arrest because he had reasonable grounds to believe that petitioner had been driving while drunk. "[T]he statute requires only that the observations of the arresting officer establish a reasonable basis for concluding that the defendant *had* operated a motor vehicle upon a public street in an intoxicated state." *Cain v. W. Va. Div. of Motor Vehicles*, 225 W. Va. 467, 471, 694 S.E.2d 309, 313 (2010) (emphasis in original).

The circuit court also found that the officer's initial encounter with petitioner was further justified under the "community caretaker" doctrine, which recognizes that

in our communities, law enforcement personnel are expected to engage in activities and interact with citizens in a number of ways beyond the investigation of criminal conduct. Such activities include a general safety and welfare role for police officers in helping citizens who may be in peril or who may otherwise be in need of some form of assistance.

*Ullom v. Miller*, 227 W. Va. 1, 10, 705 S.E.2d 111, 120 (2010). The officer testified that he was initially informed that a hit and run had been called in, stating, "[w]e definitely show up on scene to wherever the vehicle is and investigate further." He also testified that he "went back out and to start talking to him again to let him know that-what was going on with the leaving the scene part, and then talked to him a little more." The circuit court determined that the community caretaker doctrine dictates that the officer's encounter with petitioner was justified.

In its final order, the circuit court further found that the Intoximeter result of .156 is prima facie proof that petitioner was intoxicated. Petitioner did not challenge that result so "it alone is grounds for affirming the OAH's *Final Order*. Driving with a BAC in excess of .08% is a *per se* offense; there is no need to show more than the requisite BAC impairment." Finally, the circuit court affirmed the OAH's final order. Petitioner appeals from the circuit court's June 18, 2020, final order.

"On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

*Frazier v. Bragg*, 244 W. Va. 40, __, 851 S.E.2d 486, 490 (2020).

On appeal, petitioner sets forth four assignments of error. Initially, he asserts that the circuit court erred by affirming the OAH's final order because the majority of the findings of fact upon

which the order was based were not known by law enforcement until after petitioner's arrest. Petitioner argues that the discussion section of the OAH's order shows that the hearing examiner was laboring under a misunderstanding of the facts upon which he based his decision. Citing two volumes of the appendix, without further specificity, petitioner argues that the circuit court was confused, as "a review of the transcripts will demonstrate . . . ." Petitioner asserts that, in this case, the quantity of evidence is scant and the quality is poor. When Officer Toothman investigated the call, he found no evidence to corroborate leaving the scene, as he did not find any damage to Ms. Murrell's car. Without citing any supporting authority, he argues that at that point, the investigating officer had no reasonable articulable suspicion to approach petitioner so his investigatory stop of petitioner was unlawful. Petitioner compares his case to *Clower v. West Virginia Department of Motor Vehicles*, 223 W. Va. 535, 678 S.E.2d 41 (2009), though he fails to set forth any of the facts of *Clower*, instead simply asserting that the stop in this case was unjustified and unlawful so petitioner's arrest was unlawful.

As set forth above, "findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." *Muscatell*, 196 W. Va. at 590, 474 S.E.2d at 520, Syl. Pt. 1, in part. Petitioner does not challenge the fact that he was the individual who spoke to Ms. Murrell in the liquor store parking lot after she believed petitioner hit her vehicle, prompting her to call 9-1-1. During the OAH hearing, Officer Toothman testified that during his initial encounter with petitioner he noticed slow, slurred speech and that petitioner seemed disoriented; he further stated that that "raised a red flag of impairment." Therefore, Officer Toothman asked petitioner to exit the vehicle in order to investigate his suspicion of possible impairment. Upon exiting the vehicle, Officer Toothman observed that petitioner was unbalanced and unsteady. It was also at that point that the officer saw a case of beer in petitioner's passenger seat when petitioner was the only occupant of the vehicle. According to the officer's testimony, he first noticed the smell of alcohol emanating from petitioner when he performed the PBT test, which petitioner did not perform correctly. Officer Toothman testified, unprompted, that he believed petitioner was trying to evade the PBT by using his tongue to prevent a proper breath sample or simply not blowing sufficiently into the machine. The officer also testified that petitioner admitted to consuming three to four beers, in addition to taking three medications shortly before he spoke with Officer Toothman, one of which was Klonopin. Based on this testimony, much of which was corroborated by the DUI Information Sheet, we cannot find that the OAH hearing examiner clearly erred by reaching its findings of facts set forth in its final order.

Petitioner next contends that the circuit court erred by finding that Officer Toothman had reasonable grounds to believe that petitioner was DUI because the basis for the findings was obtained after the period of detention of petitioner for leaving the scene was unlawfully extended beyond that necessary to inform him that the investigation of leaving the scene had concluded. In his brief, petitioner

> concedes that the initial stop for the investigation of [] leaving the scene was reasonable. However, [he] contends that the traffic stop was unlawfully extended beyond that necessary to conclude the driving under the influence and that there was no evidence for the [i]nvestigating [o]fficer to extend the stop and test [petitioner] for the presence of alcohol.

4

Petitioner further argues that it was the officer's "second approach" and extended conversation with petitioner that formed the basis for the DUI investigation. He, therefore, argues that a determination must be made whether or not the facts of that stop established the necessary reasonable grounds, as required by West Virginia Code § 17C-5A-2(f)(1), to extend the stop beyond the period of time necessary to inform petitioner there was no evidence to support leaving the scene and initiate field sobriety tests for the presence of alcohol.

His third assignment of error—that the circuit court erred by finding that petitioner was lawfully arrested when there was no reasonable suspicion for the traffic stop—implicates the same analysis as his second assignment of error. Petitioner argues that it was unnecessary for the investigating officer to engage in a five to eight-minute conversation with petitioner to tell him that the leaving the scene investigation was concluded. As this Court set forth in *Dale v. Ciccone*, an individual cannot be lawfully arrested for DUI where law enforcement does not have the requisite articulable suspicion to initiate the traffic stop. Petitioner contends that because the officer did not have a reasonable suspicion for the traffic stop, he could not have been lawfully arrested for DUI.

Similar to our finding in *State v. Brock*, 235 W. Va. 394, 407, 774 S.E.2d 60, 73 (2015),

[b]ecause the evidence fails to show that the mission of the lawful traffic stop was completed at the time the dog sniff of the vehicle occurred, we find that there was no violation of the Petitioner's rights against unreasonable searches and seizure; the trial court properly denied the motion to suppress the evidence seized from the vehicle.

Here, of course, there was no "dog sniff;" there was, however, more than one interaction between petitioner and Officer Toothman. We agree with respondent that, in the instant case, by the time the officer completed his "mission" of determining whether there had been an occurrence of leaving the scene of a hit and run, the officer had developed a reasonable suspicion that petitioner was DUI. During the first conversation, the officer noticed slurred, slow speech. During the second conversation, the officer noticed more slurring. Respondent argues that Officer Toothman was, therefore, justified in continuing his investigation. Thus, petitioner is not entitled to relief on this ground.

With regard to a reasonable suspicion for the stop, this Court has set forth the following:

4. "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

5. "A police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard." Syl. Pt. 4, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

5

6. "For a police officer to make an investigatory stop of a vehicle the officer must have an articulable reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. In making such an evaluation, a police officer may rely upon an anonymous call if subsequent police work or other facts support its reliability, and, thereby, it is sufficiently corroborated to justify the investigatory stop under the reasonable-suspicion standard." Syl. Pt. 5, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

*Dale v. Ciccone*, 233 W. Va. at 654, 760 S.E.2d at 469, Syl. Pts. 4-6. It is uncontested that Officer Toothman traveled to the McDonald's parking lot and drive-through following a report of a hit and run involving petitioner's vehicle. It was not until the officer had spoken to both drivers that he concluded that the alleged hit and run did not occur. However, by that time he had a reasonable suspicion that petitioner was operating his vehicle while under the influence of drugs or alcohol.

Finally, petitioner argues that the circuit court erred in finding that the investigating officer's encounter with petitioner was justified under the "community caretaker" doctrine. "The 'community caretaker' doctrine is a widely recognized exception to the general warrant requirement of the Fourth Amendment of the United States Constitution." *Ullom*, 227 W. Va. at 4, 705 S.E.2d at 114, Syl. Pt. 6. Petitioner argues that if the *Ullom* test is applied to the facts in the instant case, it is clear that the community caretaker exception to the warrant requirement does not apply. However, based on our findings set forth above, we need not address the additional finding that the community caretaker doctrine further justified the officer's "encounter with petitioner."

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton