IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0175

_____

FILED

**February 8, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PATRICIA S. REED, COMMISSIONER,
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

v.

JOSEPH D. POMPEO,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 16-C-158

REVERSED AND REMANDED

_____

Submitted: January 10, 2018
Filed: February 8, 2018

Patrick Morrisey, Esq.
Attorney General
Janet E. James, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Robert G. McCoid, Esq.
McCamic, Sacco & McCoid, P.L.L.C.
Wheeling, West Virginia
Counsel for the Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.      "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus Point 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.      "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other

error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syllabus Point 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

4.     "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime.  To the extent *State v. Meadows*, 170 W. Va. 191, 292 S.E.2d 50 (1982), holds otherwise, it is overruled." Syllabus Point 1, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

5.     "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syllabus Point 2, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

6.     "Upon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test, and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety

Administration and whether, and in what manner, he or she complied with the training in administering the test to the driver." Syllabus Point 2, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).

7.   "A person's driver's license may be suspended under W. Va. Code, 17C-5-7(a) [1983] for refusal to take a designated breathalyzer test." Syllabus Point 2, *Moczek v. Bechtold*, 178 W. Va. 553, 363 S.E.2d 238 (1987).

WALKER, Justice:

Joseph D. Pompeo's driver's license was revoked as a result of a traffic stop by Wheeling police officers. The officers observed that Mr. Pompeo appeared to be under the influence of alcohol and performed three field sobriety tests, all of which Mr. Pompeo failed, and a preliminary breath test, which he refused. After his arrest, he claimed that he was unable to perform a secondary chemical test as a result of an undisclosed breathing condition. Mr. Pompeo unsuccessfully challenged the revocation of his license with the Office of Administrative Hearings (OAH) and then appealed to the Circuit Court of Ohio County. The circuit court ordered that Mr. Pompeo's driving privileges be restored on the grounds that (1) the officers lacked reasonable grounds to extend the time of the traffic stop; (2) there was no probable cause to arrest Mr. Pompeo; and (3) Mr. Pompeo's failure to submit to the secondary chemical test was not a refusal sufficient for revocation. We find the OAH's findings were not clearly wrong and that the circuit court erroneously disregarded the evidence upon which the OAH relied and abused its discretion in substituting its judgment for that of the fact finder below. We reverse and remand for reinstatement of the administrative order revoking Mr. Pompeo's driver's license.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2010, Corporal K. Prager and Officer Ezekial Goddard of the Wheeling Police Department were on routine road patrol when they observed Mr. Pompeo operating a motor vehicle with a burned-out headlight. The officers initiated a traffic stop only to inform the driver, Mr. Pompeo, of the faulty equipment; at that point, they observed

1

nothing indicative of impairment. Officer Goddard asked Mr. Pompeo for his driver's license, registration, and proof of insurance.

Upon interacting with Mr. Pompeo, the officers immediately observed signs of impairment. Though Mr. Pompeo readily provided his registration and proof of insurance, he avoided making eye contact and only produced his driver's license after being prompted twice. Though Officer Goddard testified that Mr. Pompeo's speech was normal, he also testified that he smelled alcohol on Mr. Pompeo's breath.

Corporal Prager then approached the vehicle and, like Officer Goddard, detected alcohol on Mr. Pompeo's breath and further noted that his eyes appeared bloodshot. Mr. Pompeo admitted to both Officer Goddard and Corporal Prager that he had been drinking before operating the motor vehicle. Based on their observations and Mr. Pompeo's admission, Corporal Prager had reason to believe Mr. Pompeo was driving under the influence of alcohol and asked Mr. Pompeo to exit the vehicle.

Corporal Prager administered three field sobriety tests—the horizontal gaze nystagmus (HGN), the walk-and-turn, and the one-leg stand—and attempted to administer a preliminary breath test to Mr. Pompeo. As to the HGN test, Corporal Prager documented on the DUI Information Sheet that he observed lack of smooth pursuit and distinct and sustained nystagmus at maximum deviation in both eyes. At the subsequent administrative hearing, however, the OAH found that Corporal Prager did not administer the HGN in strict

2

compliance with the National Highway Traffic Safety Administration (NHTSA) guidelines and so did not consider the results of that test in this matter.

As to the walk-and-turn test, Corporal Prager documented that he observed Mr. Pompeo step off the line of walk, miss heel-to-toe,[1] and make an improper turn. Finally, as to the one-leg stand test, Corporal Prager documented that he observed Mr. Pompeo begin the test before being instructed to do so, sway while balancing, and lower his raised foot to the ground twice.

Mr. Pompeo also refused to provide a sufficient sample for the preliminary breath test. After the field sobriety tests were administered (and failed) and the preliminary breath test was administered (and refused), Mr. Pompeo was arrested for driving under the influence (DUI). After arresting Mr. Pompeo, the officers searched his vehicle and observed a "big wet spot on the floor." They also found an empty beer can under the passenger seat.

Mr. Pompeo was transported to the Wheeling Police Department for administration of the secondary chemical test, where he signed the Implied Consent Statement, which specifies the penalties for refusing to submit to a designated secondary

---

[1] Corporal Prager could not specifically recall the distance by which Mr. Pompeo missed touching heel-to-toe, but testified during the OAH hearings that he typically allows a leeway of a few inches before deeming that a suspect performed the test incorrectly.

chemical test and the fifteen-minute time limit for refusal. Within the fifteen-minute time limit, Corporal Prager provided Mr. Pompeo with three opportunities to take the secondary chemical test. Mr. Pompeo placed his mouth on the tube attached to the secondary chemical test, but Corporal Prager testified that Mr. Pompeo did not make a legitimate effort to provide a sufficient breath sample.

Even after the requisite fifteen minutes elapsed, Corporal Prager gave Mr. Pompeo an *additional* opportunity to submit to the secondary chemical test, but he again failed to provide a sufficient breath sample. The officers testified that Mr. Pompeo advised them that he suffered from an unidentified breathing problem. Corporal Prager further later testified that, based on his observations, Mr. Pompeo was perfectly capable of providing the necessary sample. Corporal Prager testified that Mr. Pompeo did not appear winded at any time, including while getting out of the cruiser, walking up stairs into the Wheeling Police Department, or walking down a hall into the testing room. As a result, Corporal Prager deemed Mr. Pompeo's actions to be a refusal of the secondary chemical test and submitted a DUI Information Sheet to the DMV.

On August 25, 2010, the DMV revoked Mr. Pompeo's driving privileges for a period of six months and a concurrent period of one year, effective September 29, 2010. Mr. Pompeo timely requested a hearing before the OAH. In its Final Order, the OAH affirmed the revocation of Mr. Pompeo's license for DUI and for refusing to submit to the secondary chemical test.

4

Mr. Pompeo appealed the OAH's determination in the Circuit Court of Ohio County, which ordered that the OAH's Final Order be vacated and Mr. Pompeo's driving privileges be restored and reinstated. The DMV now appeals the circuit court's order and seeks reinstatement of the OAH's order revoking Mr. Pompeo's license.

## II. STANDARD OF REVIEW

We have previously outlined the appropriate standards for our review of a circuit court's order deciding an administrative appeal as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.[2]

We have also noted that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*."[3] With these standards in mind, we consider the parties' arguments.

---

[2] Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

[3] *Id.* at Syl. Pt. 2.

5

## III.  DISCUSSION

In order to resolve this matter, we must determine whether the circuit court erred in vacating the OAH's decision to revoke Mr. Pompeo's driving privileges.  We have provided clear guidance for courts reviewing an administrative agency's order:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings.  The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."[4]

In the event one of these standards is not present, a reviewing court is left with two options: affirm the order of the agency or remand the case for further proceedings.[5]  The circuit court's reversal was premised on two of these standards—

---

[4] Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983) (quoting W. Va. Code § 29A-5-4(g)).

[5] W. Va. Code § 29A-5-4(g) (2017) provides:

6

"clearly wrong in view of the reliable, probative and substantial evidence on the whole record" and "arbitrary or capricious or characterized by abuse of discretion." Accordingly, we address only those points in our analysis. This Court has also directed that reviewing courts should consider "credibility determinations by the finder of fact in an administrative proceeding [to] [be] 'binding unless patently without basis in the record.'"[6]

Framing our analysis, West Virginia Code § 17C-5A-2(f) requires that the OAH make three predicate findings after considering the evidence in an administrative proceeding. Those findings, in pertinent part, require proof that: (1) the arresting officer had reasonable grounds to believe that the person drove while under the influence of

---

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

[6] *Webb v. West Virginia Bd. of Medicine*, 212 W. Va. 149, 156, 569 S.E.2d 225, 232 (2002) (quoting *Martin v. Randolph County Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995).

7

alcohol; (2) the person was lawfully placed under arrest for a DUI offense; and (3) the tests,

if any, were administered in accordance with the law.[7] In overturning the revocation order

in this matter, the circuit court found that all three predicate findings were lacking in this

case. Specifically, the court concluded that: (A) there was insufficient evidence to support

---

[7] The 2010 version of West Virginia Code § 17C-5A-2(f) applies to this case and provides:

> In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test: *Provided,* That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five of this chapter.

8

the officers' extension of the roadside encounter with Mr. Pompeo; (B) no objective evidence was developed at the roadside to substantiate that Mr. Pompeo was driving under the influence; and (C) the officer's opinion testimony that Mr. Pompeo was "feigning an attempt to blow" into the secondary chemical testing device was unsubstantiated by the evidence. We consider each in turn.

### A. *Initiation of the Traffic Encounter and Sufficiency of the Evidence to Extend Detention*

The circuit court did not disturb the OAH's finding that the officers had reasonable grounds to initiate a traffic encounter with Mr. Pompeo due to his burned-out headlight. However, the circuit court found that insufficient evidence supported the officers' decision to extend the stop (and test Mr. Pompeo for the presence of alcohol). Consequently, we must first consider whether the facts of the stop establish the necessary reasonable grounds, as required by W. Va. Code § 17C-5A-2(f)(1), for the officers to have extended Mr. Pompeo's detention beyond the period of time necessary to inform him of the burned-out headlight.

We have held that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime...."[8] We have defined reasonable suspicion as:

---

[8] Syl. Pt. 1, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

9

> [A] less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.[9]

Further, we have instructed that "[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police."[10]

During the OAH hearing, the officers testified that although Mr. Pompeo immediately provided his registration and proof of insurance, the officers had to prompt him twice before he produced his driver's license. The officers further testified that although Mr. Pompeo's speech was normal, he avoided making eye contact and his eyes were bloodshot. Additionally, the officers testified that Mr. Pompeo's breath smelled of alcohol and that he admitted to drinking earlier prior to operating the motor vehicle. Upon these observations, the officers concluded—and the OAH agreed—there was sufficient evidence for the officers to believe that Mr. Pompeo was committing a crime (namely, driving under the influence) and, therefore, the officers properly extended the stop.

---

[9] *Muscatell*, 196 W. Va. at 596, 474 S.E.2d at 526 (quoting *Stuart*, 192 W. Va. at 432, 452 S.E.2d at 890).

[10] Syl. Pt. 2, *Stuart*, 192 W. Va. at 428, 452 S.E.2d at 886.

The circuit court, however, concluded that these factual findings of the OAH were clearly wrong. In order to sustain such a finding, the circuit court is required to show that these findings are "patently without basis in the record."[11] Although a reasonable suspicion analysis requires that "one must examine the totality of the circumstances," the circuit court examined each piece of evidence indicative of impairment in isolation.[12]

The circuit court found that "the odor of an alcoholic beverage on one's breath can exist in the absence of being under the influence." As to Mr. Pompeo's bloodshot eyes, the circuit court found that this issue "may be ascribed to any number of innocent reasons" and that "counsel's eyes were noted to have blood in them and that Patrolman Prager did not believe counsel to be intoxicated."[13] Additionally— in direct contradiction of the record—the circuit court found that Mr. Pompeo "…produced his driver's information in an unremarkable fashion that was in no manner indicative of impairment."

We find that the circuit court erroneously disregarded the evidence of impairment provided by the officers' testimony by giving undue weight to irrelevant and

---

[11] *Webb v. West Virginia Bd. of Med.*, 212 W. Va. at 156, 569 S.E.2d at 232.

[12] Syl. Pt. 2, *Stuart*, 192 W. Va. at 428, 452 S.E.2d at 886.

[13] This finding is predicated on evidence elicited on cross-examination by Mr. Pompeo's counsel: "Q:…How do my eyes look right now? A: They look fine to me, sir. Q: No blood in them at all? A: Just a little bit under maybe your right eyeball. Q: There is some blood there. You don't suspect I'm under the influence of alcohol? A: No, sir."

speculative evidence and by viewing each piece of evidence in isolation, rather than looking at the totality of the circumstances. In light of the evidence before the OAH, the OAH's findings are not clearly wrong and, as such, we find that the officers had reasonable grounds to extend the traffic encounter with Mr. Pompeo beyond the amount of time necessary simply to inform him of a burned-out headlight.

## B. Probable Cause to Arrest for DUI

West Virginia Code § 17C-5A-2(f)(2) requires the OAH to make a finding that the arrest for DUI was lawful.[14] To be lawful, the arrest must be supported by probable cause.[15] As the United States Supreme Court has stated:

> This Court repeatedly has explained that "probable cause" to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.[16]

---

[14] W. Va. Code § 17C-5A-2(f)(2), in pertinent part, requires the OAH to make specific findings as to: "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol…or was lawfully taken into custody for the purpose of administering a secondary test." *See also Dale v. Ciccone*, 233 W. Va. 652, 658-59, 760 S.E.2d 466, 472-73 (2014).

[15] *Ciccone*, 233 W. Va. at 661, 760 S.E.2d at 475.

[16] *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted).

Probable cause is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[17]

In this case, we find that there was probable cause for the officers to place Mr. Pompeo under arrest for the offense of driving under the influence. In addition to the evidence that provided reasonable grounds for the officers to extend the traffic encounter, we may also consider the field sobriety tests—the HGN, the walk-and-turn, and the one-leg stand—and the preliminary breath test in analyzing probable cause, although "[n]either the DUI statutes nor our case law require a [preliminary breath test] or any particular field sobriety test to establish that a driver was under the influence for purposes of administrative revocation."[18]

This Court regularly has addressed the admissibility of field sobriety test results in administrative license revocation cases. In Syllabus Point 2 of *White v. Miller*, we held that

> [u]pon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test,

---

[17] *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citations omitted).

[18] *Reed v. Hill*, 235 W. Va. 1, 9, 770 S.E.2d 501, 509 (2015).

13

and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver.[19]

We have further held that when an officer fails to satisfy some requirement of a field sobriety test, such failure goes "to the weight of the evidence, not its admissibility."[20]

At the administrative hearing, the OAH found that Corporal Prager did not administer the HGN in strict compliance with the NHTSA guidelines and did not consider the results of the test in this matter. Specifically, Corporal Prager admitted that he did not count the number of sweeps and holds as required by the guidelines. Because of the non-compliance, it was not clearly wrong for the OAH to accord no weight to the HGN test results. And the circuit court was within its authority to rely on this finding from the OAH.

However, the OAH found the officers' testimony regarding Mr. Pompeo's performance of the walk-and-turn and the one-leg stand to be credible. Corporal Prager testified that Mr. Pompeo failed the walk-and-turn by stepping off the line of walk, missing heel-to-toe, and making an improper turn. Though the officer could not specifically recall the distance by which Mr. Pompeo missed touching heel-to-toe, the officer testified that he

---

[19] Syl. Pt. 2, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).

[20] *Dale v. McCormick*, 231 W. Va. at 633-34, 749 S.E.2d 232-33 (2013) (quoting *In re Flood Litigation Coal River Watershed*, 222 W. Va. 574, 582, 668 S.E.2d 203, 211 (2008)).

typically allows a leeway of a few inches before failing a test-taker. The officer testified that Mr. Pompeo failed the one-leg stand by starting the test before being instructed to do so, swaying while balancing, and lowering his raised foot to the ground not once, but twice.

Nonetheless, the circuit court ignored the OAH's determination that Corporal Prager testified credibly as to Mr. Pompeo's failures and disregarded this evidence because Corporal Prager was unsure whether he had asked Mr. Pompeo if he understood the instructions. Importantly, Mr. Pompeo offers nothing to show that he did not understand. Regardless, the circuit court erred in excluding this evidence altogether, as we have clearly stated that failures such as this go to the "weight of the evidence, not the admissibility."[21]

The circuit court further excluded Mr. Pompeo's refusal of the preliminary breath test because "the officers did not wait the requisite fifteen (15) minutes before giving the test." A motorist is deemed to have given implied consent for a [preliminary breath test] for purposes of determining alcohol concentration.[22] The statute provides that "such

---

[21] *Id.*

[22] The 2010 version of West Virginia Code §17C-5-4(a) applies to this case and provides:

> Any person who drives a motor vehicle in this state is considered to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis and a secondary chemical test of either his or her blood, breath or urine for the purposes of determining the alcoholic content of his or her blood.

15

breath analysis must be administered as soon as possible after the law-enforcement officer has a reasonable belief that the person has been driving while under the influence of alcohol…."[23], but also directs that a preliminary breath test "must be administered with a device and in a manner approved by the Department of Health for that purpose."[24]  Though the statute requires immediacy in performing the test, it also requires compliance with the methods and standards approved by the Bureau for Public Health of the Department of Health.   To that end, we have upheld the Bureau for Public Health's legislative rule providing that "[t]he law enforcement officer shall prohibit the person from drinking

---

[23] W. Va. Code § 17C-5-5 (2017), in full, states:

> When a law-enforcement officer has reason to believe a person has committed an offense prohibited by section two [§ 17C-5-2] of this article or by an ordinance of a municipality of this State which has the same elements as an offense described in said section two of this article, the law-enforcement officer may require such person to submit to a preliminary breath analysis for the purpose of determining such person's blood alcohol content. Such breath analysis must be administered as soon as possible after the law-enforcement officer has a reasonable belief that the person has been driving while under the influence of alcohol, controlled substances or drugs. Any preliminary breath analysis required under this section must be administered with a device and in a manner approved by the Department of Health for that purpose. The results of a preliminary breath analysis shall be used solely for the purpose of guiding the officer in deciding whether an arrest should be made. When a driver is arrested following a preliminary breath analysis, the tests as hereinafter provided in this article shall be administered in accordance with the provisions thereof.

[24] *Id.*

alcohol or smoking for at least fifteen minutes before conducting the preliminary breath test."[25]

According to the DUI Information Sheet, the officers administered the preliminary breath test just ten minutes after they first had contact with Mr. Pompeo; however, the OAH did not rely on this in its determination that the officers had probable cause for the arrest. The OAH found, and we agree, that there remained sufficient evidence of impairment whether or not we consider Mr. Pompeo's refusal of the preliminary breath test. We find that the OAH's finding of probable cause for arrest is supported by the substantial evidence presented, and the circuit court abused its discretion in substituting its judgment for that of the fact finder below.

## C. *Refusal of the Secondary Chemical Test*

Finally, we now consider whether Mr. Pompeo's failure to perform the secondary chemical test following his arrest constituted a refusal. As we have held, "[a] person's driver's license may be suspended under W. Va. Code, 17C-5-7 [1983] for refusal to take a designated breathalyzer test."[26] According to the statute, an officer making a DUI

---

[25] *Reed v. Hill*, 235 W. Va. at 7, 11-14, 770 S.E.2d at 507, 511-14 (quoting W. Va. Code R. § 64-10-5.2(a) (2005)).

[26] Syl. Pt. 2, *Moczek v. Bechtold*, 178 W. Va. 553, 363 S.E.2d 238 (1987).

17

arrest must inform the arrestee that a refusal to submit to a secondary chemical breath test will result in license suspension.[27] The statute further requires that the officer set forth the penalties for refusal, both orally and by providing a written copy to the arrestee.[28] In this case, Mr. Pompeo does not dispute that Corporal Prager complied with these duties. It is undisputed that Mr. Pompeo failed to perform the secondary test. At issue here is whether Mr. Pompeo's allegations of an unidentified breathing problem, without more, excuse him from what would otherwise constitute a refusal.

The OAH found that Mr. Pompeo was afforded three attempts to submit to the secondary chemical test and, although he placed the mouthpiece into his mouth, he did not make a legitimate effort to provide a sufficient breath sample. After a fifteen-minute period, Mr. Pompeo was afforded another opportunity to submit to the secondary chemical test, but, again, he would not provide a sufficient breath sample. At this point, Corporal

---

[27] The 2010 version of West Virginia Code § 17C-5-7 applies to this case and provides, in relevant part:

> (a) If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not be given: *Provided,* That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life; and that after fifteen minutes following the warnings the refusal is considered final.

[28] *Id.*

18

Prager deemed Mr. Pompeo's actions to constitute a refusal to submit to the secondary chemical test.

Although both officers testified that Mr. Pompeo advised them that he suffered from an unidentified breathing problem, Corporal Prager testified that, based on his observations, Mr. Pompeo was merely feigning an attempt to provide a breath sample into the testing device. The OAH found the testimony of the officers to be credible and determined that Mr. Pompeo's failure to perform the secondary chemical test was, in fact, a refusal. Specifically, the OAH found that Mr. Pompeo offered no credible rebuttal testimony regarding any asthmatic or breathing condition that would inhibit his ability to perform the test.

The circuit court erred in disregarding the OAH's findings on the issue of the secondary chemical test. First, the circuit court incorrectly places the burden of proof on the DMV. Once the DMV satisfied its burden of proof to show that the driver refused to submit to the secondary chemical test, the burden shifted to Mr. Pompeo to show that he was physically unable to take the test.[29] Mr. Pompeo offered absolutely no testimony or other evidence of a breathing condition.

---

[29] *Cunningham v. Bechtold*, 186 W. Va. 474, 480, 413 S.E.2d 129, 135 (1991).

We find no clear error by the OAH in its findings on this issue. The OAH listened to the officers' testimony that Mr. Pompeo displayed no symptoms of a breathing impairment and watched video footage of the traffic encounter. It then found the officers' accounts to be credible. Specifically, the OAH found that Mr. Pompeo offered no credible rebuttal testimony regarding any asthmatic or breathing condition that would inhibit his ability to perform the test.

## IV. CONCLUSION

For the reasons stated above, we reverse the circuit court's order and remand this case for reinstatement of the Commissioner's order administratively revoking Mr. Pompeo's driver's license.

Reversed and Remanded.