IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

_____

No. 17-0834

_____

FILED

**March 6, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PAT REED,
Commissioner, Division of Motor Vehicles,
Petitioner

v.

JOSEPH M. WINESBURG,
Respondent

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 17-P-19

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 15, 2019
Filed: March 6, 2019

Patrick Morrisey, Esq.                      Robert G. McCoid., Esq.
Attorney General                            McCamic, Sacco, & McCoid PLLC
Janet E. James, Esq.                        Wheeling, West Virginia
Assistant Attorney General                  Counsel for the Respondent
Charleston, West Virginia
Counsel for the Petitioner

JUSTICE ARMSTEAD delivered the Opinion of the Court.

1.     "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2.     "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus Point 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

3.     "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion

or clearly unwarranted exercise of discretion." Syllabus Point 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

4. "Probable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed." Syllabus Point 2, in part, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996).

5. "Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations." Syllabus Point 1, in part, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

6. "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syllabus Point 2, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984).

ARMSTEAD, Justice:

The Office of Administrative Hearings ("OAH") entered an order affirming the revocation of Respondent Joseph Winesburg's ("Mr. Winesburg") driver's license for driving under the influence of alcohol ("DUI"). The circuit court reversed the OAH's order, ruling that there was no "lawful evidence" that Mr. Winesburg was under the influence of alcohol when he was arrested for DUI. It determined that "[b]ecause Mr. Winesburg was not lawfully arrested, any secondary chemical test was not lawfully administered." Mr. Winesburg's secondary chemical test following his arrest revealed that he had a blood alcohol concentration ("BAC") of .109—well above the legal limit of .08.[1]

On appeal, Petitioner Pat Reed, Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), contends that the circuit court erred by failing to consider the totality of the evidence relating to Mr. Winesburg's arrest for DUI, including 1) his admission that he had consumed five or six beers prior to driving, 2) his glassy, bloodshot eyes, and 3) the odor of alcohol that was detected on his breath.

After review, we agree with the DMV and find that the OAH's order was supported by substantial evidence demonstrating that Mr. Winesburg was lawfully arrested for DUI. The circuit court abused its discretion by substituting its judgment for that of the OAH in violation of our established standard of review. We therefore reverse the circuit

---

[1] *See* W.Va. Code § 17C-5-2 (2010) (defining criminal DUI to include driving with a BAC of .08 or more).

1

court's order and reinstate the OAH's order affirming the DMV's revocation of Mr. Winesburg's driver's license.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Winesburg was arrested and charged with DUI on December 24, 2010. Thereafter, the DMV ordered the revocation of Mr. Winesburg's driver's license by order dated January 20, 2011. Mr. Winesburg timely requested a hearing before the OAH to contest the revocation. The OAH held a hearing on May 29, 2015.

Two witnesses testified during the OAH hearing—Ohio County Deputy Sherriff Branden Brooks ("Deputy Brooks") and Mr. Winesburg. Deputy Brooks testified that on December 24, 2010, he was dispatched to a single vehicle accident on Route 88 in Ohio County, West Virginia.[2] Upon arriving at the scene at 3:36 a.m., Deputy Brooks observed a vehicle "laying on its side beside the road." Mr. Winesburg was standing next to the vehicle when Deputy Brooks arrived. According to Deputy Brooks, Mr. Winesburg said that "two deer jumped out in front of him and he swerved and he went up on a hillside and slowly rolled down to his side." Deputy Brooks described his initial observation of Mr. Winesburg as follows: "I noticed that his eyes were glassy and bloodshot. There appeared to be the odor of alcoholic beverage coming from his person. I asked him if he had

---

[2] A park ranger who worked in the area made the initial call to the police, alerting them of the vehicle accident.

2

consumed any alcohol prior to driving and he said he had some beer. He said he drank some beer about five hours earlier."

Following this initial interaction, Deputy Brooks administered three field sobriety tests—the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one leg stand. Mr. Winesburg passed the walk and turn and one leg stand tests.[3] Regarding the HGN test, Deputy Brooks stated that Mr. Winesburg had "a lack of smooth pursuit in both eyes and very distinct sustained nystagmus and maximum deviation of both eyes." According to Deputy Brooks, the result of the HGN test demonstrated impairment.

Thereafter, Deputy Brooks administered a preliminary breath test ("PBT") at 3:49 a.m. The PBT registered a BAC of .11. Deputy Brooks arrested Mr. Winesburg for DUI and transported him to the police station. Upon arriving at the police station, Mr. Winesburg executed the West Virginia Implied Consent Statement and was read his Miranda rights. After Deputy Brooks observed him for twenty minutes,[4] Mr. Winesburg registered a BAC of .109 on the designated secondary chemical breath test.

---

[3] While Deputy Brooks testified that Mr. Winesburg passed these two tests, he also noted that Mr. Winesburg missed one heel-to-toe during the walk and turn test, and that he swayed while balancing during the one leg stand test.

[4] *See* W.Va. Code St. R. § 64-10-7.2(a) ("The law enforcement officer shall keep the person being tested under constant observation for a period of twenty minutes before the test is administered to insure that the person has nothing in his or her mouth at the time of the test and that he or she has had no food or drink or foreign matter in his or her mouth during the observation period.").

3

During cross-examination, Deputy Brooks testified that when he arrived at the scene of the accident, Mr. Winesburg was "standing normally" and that his speech was not slurred. Also, Deputy Brooks admitted that he could not definitively state whether he conducted the HGN test in conformance with the National Highway Transportation Safety Administration's guidelines.[5] Further, he agreed that he administered the PBT to Mr. Winesburg thirteen minutes after arriving at the scene. Deputy Brooks did not dispute that he should have waited fifteen minutes before administering the PBT, and, therefore, agreed that the PBT was not given in the proper fashion.[6]

Finally, when asked to explain his decision to arrest Mr. Winesburg for DUI, Deputy Brooks testified:

---

[5] Specifically, Mr. Winesburg's counsel asked Deputy Brooks:

Q. So with respect to the horizontal gaze nystagmus tests, you would agree with me that when you're checking for smooth pursuit you're required to go two seconds out and two seconds back the first eye, left eye, two seconds out, two seconds back, right eye, or whichever order you choose. But the standard also requires you go two seconds out and two seconds back again, and two seconds out and two seconds back again, correct?

A. Yes.

Deputy Brooks testified that he could not state whether he made one or two passes for each eye: "I don't recall if I did it again or if I just did it that one time for both eyes."

[6] The West Virginia Bureau for Public Health has promulgated a legislative rule providing that "[t]he law enforcement officer shall prohibit the person from drinking alcohol or smoking for at least fifteen minutes before conducting the [PBT] test." W.Va.C.S.R. § 64-10-5.2(a) (2005). *See Reed v. Hill*, 235 W.Va. 1, 8, 770 S.E.2d 501, 508 (2015).

4

> I'm not just going off of one single moment or one single test or one single clue, **I'm looking at the overall picture and the totality of the circumstances** there with regard to the wrecked vehicle, the bloodshot, glassy eyes, the odor of alcohol on his breath. He was drinking, yes. Thinking I'm doing the test properly with horizontal gaze, I get a fail, and then although I didn't pay attention to time on the PBT, all that comes into my factor as to when I'm placing someone into custody.

(Emphasis added.)

The next and final witness to testify at the OAH hearing was Mr. Winesburg. He stated that prior to the vehicle accident, he was at a friend's house watching a football game that began at 8:00 or 8:30 p.m. Mr. Winesburg admitted that he had consumed "five or six beers" during the course of the football game, which he estimated lasted until midnight. After the game ended, Mr. Winesburg attempted to drive home. He testified that

> I was on my way home, driving through Oglebay. It was below freezing that night, the roads were slick so I was driving slowly and actually going around the turn right below the Oglebay mansion . . . it's a pretty sharp turn. Several deer actually came off the hill. I swerved and put on my brakes and slid into the hillside and literally it was a slow motion wreck because of the hillside, and I literally toppled over.

Mr. Winesburg estimated that Deputy Brooks arrived at the scene of the accident approximately one hour after it occurred. When Deputy Brooks asked if he had been drinking alcohol, Mr. Winesburg testified that he admitted to having consumed "five or six beers" that evening. Mr. Winesburg described his initial interaction with Deputy Brooks as follows:

5

When I first walked up to [Deputy Brooks] after he arrived on the scene, I walked up to him, told him what happened, he began asking questions, the typical, did you have anything to drink, and truthfully I told him that I did, and I don't know what else he would have asked me at that point. But he, and I quote, said, "You seem fine to me, but let's make sure."

At the conclusion of Mr. Winesburg's testimony, Deputy Brooks was recalled and testified that he did not recall telling Mr. Winesburg that he "seemed fine" during their initial interaction.

The OAH issued a final order on January 19, 2017, affirming the DMV's revocation of Mr. Winesburg's driver's license. The OAH concluded that based on the totality of the evidence, Deputy Brooks had "reasonable grounds to believe that [Mr. Winesburg] had been operating a motor vehicle under the influence of alcohol and that [Mr. Winesburg] was lawfully arrested for a DUI offense on December 24, 2010." The evidence cited in the OAH's order supporting this conclusion includes: 1) Deputy Brooks "detected the odor of alcoholic beverage emitting from [Mr. Winesburg's] breath," 2) Mr. Winesburg "exhibited bloodshot glassy eyes," and 3) Mr. Winesburg's admission that he had consumed alcoholic beverages prior to driving his vehicle. The OAH also noted that Deputy Brooks testified "regarding his observations during the administration of the [HGN] test . . . as [an] indicator of insobriety." Finally, the OAH noted that Mr. Winesburg failed the PBT, but determined that Deputy Brooks did not observe Mr. Winesburg for fifteen minutes prior to administering the PBT, and "therefore, the result of such test will not be considered in this matter."

6

Regarding the secondary chemical test, the OAH's order provides:

> Irrespective of [Mr. Winesburg's] assertion to [Deputy Brooks] that he was not under the influence of alcohol, the results of the secondary chemical test . . . reveal that [Mr. Winesburg's] blood alcohol content was .109%, *prima facia* evidence that [Mr. Winesburg] was impaired. Such result also renders [Mr. Winesburg's] counsel's attempt to attribute the indicia of impairment exhibited by [Mr. Winesburg] to factors other than [Mr. Winesburg's] admitted consumption of alcohol to be moot.

Mr. Winesburg appealed the OAH's order to the circuit court. The circuit court found that Deputy Brooks had a reasonable, articulable suspicion to initiate an encounter with Mr. Winesburg. However, the circuit court concluded that Mr. Winesburg "exhibited no symptoms of impairment whatsoever, a fact conceded by Dep. Brooks." The circuit court's order goes on to consider and reject a number of impairment factors relied upon by the OAH. First, the circuit court noted that

> Mr. Winesburg had the odor of an alcoholic beverage on his person. However, this was not indicative of per se impairment. . . . Indeed, the odor of an alcoholic beverage on one's breath can exist in the absence of being under the influence, a fact which the deputy himself conceded, and it is not illegal per se to drink alcoholic beverages and thereafter operate a motor vehicle, another fact he [Deputy Brooks] acknowledged.

Next, the circuit court determined that "a myriad of innocuous, innocent reasons can account for glassy eyes, including standing in below freezing weather and fatigue." The circuit court's order notes that Mr. Winesburg's interaction with Deputy Brooks occurred "after 3:00 a.m. and he had been standing in the below-freezing cold

7

temperatures for some time." Thus, the circuit court did not consider Mr. Winesburg's glassy, bloodshot eyes to be an indicator of impairment.[7]

The circuit court determined that Mr. Winesburg's speech was normal and his actions "in walking and standing, were, as a matter of law, not indicative that he was under the influence of alcohol." Therefore, according to the circuit court, Mr. Winesburg should have been "questioned and released" by Deputy Brooks as there was no evidence supporting Mr. Winesburg's arrest for DUI. The circuit court ruled that the OAH's finding to the contrary was "simply unsubstantiated by the record, constitutes an abuse of discretion, and is clearly erroneous in light of substantial and reliable evidence to the contrary." Based on its conclusion that there was no "lawful evidence" that Mr. Winesburg was under the influence of alcohol at the time of the accident, the circuit court determined that Mr. Winesburg was not lawfully arrested. Because a lawful arrest is a predicate to upholding an order of revocation, the circuit court concluded that the revocation of Mr. Winesburg's driver's license was improper.

Finally, the circuit court ruled that Mr. Winesburg's secondary chemical breath test, in which his BAC was .109, must be excluded for two reasons: 1) "because Mr.

---

[7] The circuit court also disputed the OAH's reliance on the HGN test and ruled that the test was not properly administered to Mr. Winesburg. It cited Deputy Brooks' testimony before the OAH that he could not state whether he correctly administered the test. Similarly, the court ruled that the PBT was not given in conformity with W.Va. Code § 17C-5-5 and West Virginia C.S.R. § 64-10-5.2(a) which prohibit the test subject from "drinking or smoking for at least fifteen minutes before conducting the [preliminary] breath test." However, the OAH's order specifically provides that it did not rely on the PBT.

8

Winesburg was not lawfully arrested, any secondary chemical test was not lawfully administered," and 2) "the secondary chemical test results must also be discounted when evaluated contextually."

Following entry of the circuit court's order, the DMV filed the instant appeal.

## II. STANDARD OF REVIEW

This Court has previously established the standards for our review of a circuit court's order deciding an administrative appeal: "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Further, Syllabus Point 2 of *Muscatell* provides: "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." *Id.* With these standards as guidance, we consider the parties' arguments.

## III. ANALYSIS

Before examining whether the circuit court erred by reversing the OAH's order, we begin our analysis by addressing a troubling aspect of this case. Mr. Winesburg was arrested for DUI on December 24, 2010. He timely requested a hearing before the OAH. The OAH hearing occurred on May 29, 2015, over four years after the arrest. This

9

Court is troubled by the extreme delay between the arrest and the OAH hearing.[8]  The record does not provide any explanation for this delay. Such delays have the potential to create substantial harm.  For example, an arresting officer may have difficulty recalling the facts of an arrest that occurred four and a half years ago.  Similarly, a driver's ability to defend him or herself may be compromised by a four-and-a-half year delay. A witness may not remember the circumstances surrounding a four-year old incident.

This Court discussed unreasonable delay in the context of an administrative proceeding in *Frantz v. Palmer*, 211 W.Va. 188, 192, 564 S.E.2d 398, 402 (2001):

> Among the list of guarantees set forth in article III, section 17 of our state constitution is the laudatory mandate that "justice shall be administered without . . . delay." W.Va. Const. art. III, § 17.  Just as circuit court judges "have an affirmative duty to render timely decisions on matters properly submitted within a reasonable time following their submission," Syl. Pt. 1, in part, *State ex rel. Patterson v. Aldredge*, 173 W.Va. 446, 317 S.E.2d 805 (1984), the

---

[8] We note that this Court has held:

> On appeal to the circuit court from an order of the Office of Administrative Hearings affirming the revocation of a party's license to operate a motor vehicle in this State, when the party asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings, the party must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay.

Syllabus Point 2, *Reed v. Staffileno*, 239 W.Va. 538, 803 S.E.2d 508 (2017).

10

> obligation to act in a timely fashion is similarly imposed upon administrative bodies, as we recognized in syllabus point seven of *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984): "**[A]dministrative agencies performing quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted**."

(Emphasis added).

License revocation laws are intended to protect the public. This Court has previously stated, "[t]he purpose of the administrative sanction of license revocation is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways." *Shell v. Bechtold*, 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (citation omitted). If an arresting officer fails to recall the facts of an arrest because it occurred years before the OAH hearing, a person who drives under the influence of alcohol may escape punishment and will not be removed from our highways. Thus, unreasonable delays between DUI arrests and OAH hearings have the potential to create public harm.

In the present case, the delay between Mr. Winesburg's arrest and the OAH hearing was not raised as an assignment of error, and the parties have not cited any specific facts that indicate that the delay in this case was prejudicial. Therefore, we proceed to examine the main issue raised in this appeal—whether the circuit court erred by reversing the OAH's order affirming Mr. Winesburg's driver's license revocation.

Our law regarding a circuit court's review of an administrative order is as follows:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or

11

decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syllabus Point 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

The DMV argues that the circuit court abused its discretion by concluding that there was no evidence "which warranted an arrest. Rather than performing its duty to determine whether there was substantial evidence to support the OAH's Final Order, the circuit court systematically discounted every piece of evidence of impairment, . . . failed to assess the totality of the evidence, and substituted its judgment" for that of the OAH. After review, we agree with the DMV and find that the circuit court abused its discretion by failing to consider the totality of the evidence of impairment and by substituting its judgment for that of the OAH in violation of our established standard of review.

While the DMV raises a number of assignments of error, the paramount issue is whether the circuit court erred by reversing the OAH's conclusion that Mr. Winesburg's arrest for DUI was lawful. The OAH is required to make a finding that an arrest for DUI

was lawful.[9]  "To be lawful, the arrest must be supported by probable cause." *Reed v. Pompeo*, 240 W.Va. 255, 262, 810 S.E.2d 66, 73 (2018).  This Court has previously explained that "[p]robable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed." Syllabus Point 2, in relevant part, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996).  Further, the United States Supreme Court has explained: "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted).

Additionally, the Supreme Court has noted that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends **on the totality of the circumstances**." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (emphasis added).  Indeed, the Supreme Court has emphasized that our probable cause standard is a "practical, nontechnical conception that

---

[9] W.Va. Code § 17C-5A-2(f)(2), in pertinent part, requires the OAH to make specific findings as to "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . . or was lawfully taken into custody for the purpose of administering a secondary test." *See also Dale v. Ciccone*, 233 W.Va. 652, 658-59, 760 S.E.2d 466, 472-73 (2014).

13

deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, 540 U.S. at 370.

Applying the probable cause standard to the present case, we find that the OAH's ruling that Deputy Brooks had probable cause to arrest Mr. Winesburg for DUI is supported by substantial evidence. The OAH assessed the totality of the circumstances underlying Deputy Brooks' decision to arrest Mr. Winesburg for DUI. These circumstances included 1) a single vehicle wreck, 2) Mr. Winesburg's glassy, bloodshot eyes, 3) the odor of alcohol detected on his breath, and 4) Mr. Winesburg's admission that he had consumed "five or six" beers prior to driving. This Court has previously held that glassy eyes, the odor of alcohol, and a person's admission to having consumed alcohol are all relevant factors in an administrative hearing concerning a driver's license revocation. *See* Syllabus Point 3, *White v. Miller*, 228 W.Va. 797, 724 S.E.2d 768 (2012).[10] We therefore conclude

---

[10] Syllabus Point 3 of *White v. Miller* provides:

> A driver's license to operate a motor vehicle in this State cannot be administratively revoked solely and exclusively on the results of the driver's horizontal gaze nystagmus test. Rather, additional evidence in conjunction with the horizontal gaze nystagmus test is required for revocation: for example, the results of other field sobriety tests; the results of a secondary chemical test; whether the vehicle was weaving on the highway; whether the driver admitted consuming an alcoholic beverage; whether the driver exhibited glassy eyes or slurred speech; and/or whether the odor of an alcoholic beverage was detected.

14

that based on the totality of the circumstances Deputy Brooks observed, a prudent person would believe that a DUI offense was committed.[11]

This Court has made clear that "[s]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations." Syllabus Point 1, in part, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). In the present case, the circuit court failed to give deference to the OAH's factual finding that, based on the totality of the evidence, Mr. Winesburg exhibited numerous signs of impairment. Instead, it considered each piece of evidence of impairment in isolation and determined that Mr. Winesburg "exhibited no symptoms of impairment whatsoever, a fact conceded by Dep. Brooks." The record does not support the circuit court's statement that Deputy Brooks conceded that Mr. Winesburg "exhibited no symptoms of impairment." To the contrary, Deputy Brooks testified that he assessed the totality of the circumstances and determined that Mr. Winesburg was DUI.

---

[11] This Court has previously provided that "[n]either the DUI statutes nor our case law require a PBT or any particular field sobriety test to establish that a driver was under the influence for purposes of administrative revocation." *Reed v. Hill*, 235 W.Va. at 9, 770 S.E.2d at 509. The OAH did not rely on the PBT because it was not administered in the correct fashion. Regarding the HGN, the OAH noted that Deputy Brooks testified "regarding his observations during the administration of the [HGN] test . . . as [an] indicator of insobriety." While Deputy Brooks testified that he was unsure whether the HGN test was properly administered, this Court has explained that a police officer's failure to satisfy some requirements for administering an HGN test goes to the weight of the evidence, not to its admissibility. *Dale v. Oakland*, 234 W.Va. 106, 763 S.E.2d 434 (2014). Thus, we find no error with the OAH's consideration of the HGN test results.

15

Further, this Court has determined that a circuit court should not consider each piece of evidence in isolation when reviewing the circumstances leading to a DUI arrest. In *Pompeo*, the Court addressed a factual scenario similar to the present case—the arresting officer testified that the defendant admitted to drinking alcohol prior to driving, had bloodshot eyes, and had the odor of alcohol on his breath. 240 W.Va. at 262, 810 S.E.2d at 73. The OAH in *Pompeo* concluded that the totality of the evidence demonstrated that there was sufficient evidence for the arresting officer to conclude that the defendant was DUI. *Id.* However, the circuit court reversed the OAH's ruling after considering each indicator of impairment in isolation:

> The circuit court found that "the odor of an alcoholic beverage on one's breath can exist in the absence of being under the influence." As to Mr. Pompeo's bloodshot eyes, the circuit court found that this issue "may be ascribed to any number of innocent reasons" and that "[defendant]'s eyes were noted to have blood in them and that Patrolman Prager did not believe [defendant] to be intoxicated."
>   . . . .
>
> We find that **the circuit court erroneously disregarded the evidence of impairment provided by the officers' testimony by giving undue weight to irrelevant and speculative evidence and by viewing each piece of evidence in isolation, rather than looking at the totality of the circumstances**. In light of the evidence before the OAH, the OAH's findings are not clearly wrong[.]

240 W.Va. at 262, 810 S.E.2d at 73 (Emphasis added, footnotes omitted).

As in *Pompeo*, we conclude that the circuit court erred by giving undue weight to speculative evidence ("a myriad of innocuous, innocent reasons can account for glassy eyes, including standing in below freezing weather and fatigue") and by viewing

16

each piece of evidence in isolation. Instead, per our established standard of review, the circuit court should have assessed the totality of the evidence underlying the OAH's finding that Deputy Brooks had probable cause to arrest Mr. Winesburg for DUI. We find that the OAH's finding of probable cause for arrest is supported by substantial evidence. The circuit court abused its discretion by substituting its judgment for that of the OAH.

Finally, we find that the circuit court erred by excluding the results of the secondary chemical breath test. The OAH determined that the "results of the secondary chemical test . . . reveal that [Mr. Winesburg's] blood alcohol content was .109%, *prima facia* evidence that [Mr. Winesburg] was impaired." The circuit court disagreed with the OAH and determined that the secondary chemical breath test results should be excluded for two reasons: 1) "because Mr. Winesburg was not lawfully arrested, any secondary chemical test was not lawfully administered," and 2) "the secondary chemical test results must also be discounted when evaluated contextually."

For the reasons previously stated, we find that Mr. Winesburg was "lawfully arrested." Further, the OAH found that Mr. Winesburg's .109 BAC was *prima facie* evidence of impairment. This finding is consistent with W.Va. Code § 17C-5-8(a),[12] which provides, in pertinent part:

> Upon trial for the offense of driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs, or upon the trial of any civil or criminal

---

[12] The 2004 version of W.Va. Code § 17C-5-8 applies to this case. This statute was amended in 2013.

17

action arising out of acts alleged to have been committed by any person driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his or her blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest or of the acts alleged. The evidence gives rise to the following presumptions or has the following effect:

. . . .

(3) Evidence that there was, at that time, eight hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted as prima facie evidence that the person was under the influence of alcohol.

This Court has previously held that "W.Va. Code § 17C-5-8(a) (2004) (Repl.Vol.2009) allows the admission of evidence of a chemical analysis performed on a specimen that was collected within two hours of either the acts alleged or the time of the arrest." Syllabus Point 5, *State v. Miller*, 227 W.Va. 395, 709 S.E.2d 750 (2011).[13] In the present case, there is no dispute that the secondary chemical breath test was administered within two hours of Mr. Winesburg's arrest. Therefore, we find that the evidence resulting therefrom was admissible and properly considered by the OAH.

We find no support for the circuit court's ruling that this *prima facie* evidence that Mr. Winesburg was under the influence of alcohol may be "discounted when evaluated

---

[13] We note that W.Va. Code § 17C-5A-2(j) provides "[i]f the Office of Administrative Hearings finds by a preponderance of the evidence that the person . . . did drive a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more . . . **the commissioner shall revoke the person's license**[.]" (Emphasis added.)

contextually." The OAH determined that Mr. Winesburg wrecked his vehicle, had glassy, bloodshot eyes, had the odor of alcohol on his breath, admitted to drinking five or six beers prior to driving, and registered a BAC of .109 on the secondary chemical breath test that was properly administered after his arrest. Evaluating Mr. Winesburg's .109 BAC in the context of these numerous signs of impairment, it is clear that he was DUI and that his secondary chemical test may not be discounted. In Syllabus Point 2 of *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984), this Court held:

> Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

The evidence in the present case, including the events leading up to the arrest and the result of the secondary chemical breath test, supports the OAH's ruling that Mr. Winesburg was DUI on December 24, 2010. Accordingly, we conclude that the circuit court erred in reversing the OAH's revocation order.

## IV. CONCLUSION

We reverse the circuit court's August 17, 2017, order and remand this matter to the circuit court to reinstate the DMV's January 20, 2011, order revoking Mr. Winesburg's driver's license.

Reversed and Remanded With Directions.

19